OPINION
{¶ 1} This is an appeal by defendant-appellant, "N.D.C.," from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which appellant was found guilty of rape and gross sexual imposition.
 {¶ 2} On June 17, 2005, appellant was indicted on four counts of rape, in violation of R.C. 2907.02, and one count of gross sexual imposition, in violation of R.C. 2907.05. The matter came for trial before a jury beginning on June 15, 2006. *Page 2 
 {¶ 3} In April 2005, "DR," then age 12, resided with his mother (hereafter "DR's mother") and his two younger stepbrothers, "DC," age seven, and "NC," age eight, in Columbus, Ohio. Appellant is the father of DC and NC, and the stepfather of DR; appellant began dating DR's mother when DR was three years of age.
 {¶ 4} On April 1, 2005, appellant moved back to DR's mother's residence after being away for a period of time. The state's theory of the case was that appellant sexually assaulted DR on three separate occasions, over an approximate two-week period in early April 2005, while DR's mother was at work. DR testified that two of the incidents occurred when he was cleaning the bathroom; specifically, on both occasions, appellant entered the bathroom, pulled down DR's pants, and inserted his finger inside DR's anus. DR related a third incident in which appellant told him to go to his mother's bedroom, take off his clothes, and lie on the bed. DR testified that, as he was lying face down on the bed, appellant got on top of him and "put his penis inside my butt." (Tr. Vol. II, at 266.)
 {¶ 5} DR's younger brothers both testified regarding the alleged incident in the bedroom. Specifically, DR's brother, NC, testified that he observed his "dad on top of my brother" while looking through a vent located in his bedroom. (Tr. Vol. III, at 445.) DR's other brother, DC, testified that he looked through his mother's bedroom door and observed his father on top of DR on the bed. According to DC, his father "[p]ut his private part in my brother's behind." (Tr. Vol. III, at 478.) Appellant noticed DC standing near the bedroom door, and he grabbed a belt and struck DC on the legs.
 {¶ 6} Sha Clark is a medical social worker at Children's Hospital. On May 23, 2005, Clark conducted an interview with DR at Children's Hospital. During the interview, *Page 3 
DR indicated that, on several occasions, he had been a victim of sexual abuse by appellant. DR related that appellant had touched his private parts, and he described different incidents occurring in the bathroom and one incident that occurred in the bedroom.
 {¶ 7} Dr. Ellen McManus, an emergency medical physician at Children's Hospital, conducted a physical examination of DR on May 23, 2005. The physician noted nothing abnormal during the examination.
 {¶ 8} In April 2005, DR's mother was employed and worked first shift hours. Approximately two weeks after appellant had moved back to her residence, DR's mother noticed some marks on DCs legs. She asked NC about the marks on DCs legs, and NC told her appellant "had whooped him for getting in trouble at school." (Tr. Vol. III, at 528.) Appellant moved out of the house on April 15, 2005, and, on May 16, 2005, DR's mother learned of the alleged incident involving appellant and DR. She phoned the police, and subsequently took the boys to Children's Hospital.
 {¶ 9} On cross-examination, DR's mother acknowledged that she had concerns about appellant's sexuality, fearing he might do something sexually inappropriate to her children. When she asked DR whether any inappropriate activity had occurred, he repeatedly told her nothing had happened.
 {¶ 10} The first witness for the defense was an uncle of DR's (hereafter "DR's uncle"). In the spring of 2005, DR's uncle had a conversation with DR about alleged sexual contact, and DR denied having any such contact with appellant. DR's uncle testified that DR told him about threats his mother made to him (DR). *Page 4 
 {¶ 11} Kathleen Cooke is a private investigator who investigated the allegations at the request of defense counsel. As part of the investigation, Cooke interviewed DR's mother, who informed Cooke that she started a new job on April 7, 2005.
 {¶ 12} On May 17, 2005, Columbus Police Officer Wendell J. Tolber responded to a 911 call at an address on Maryland Avenue. According to Officer Tolber's report, the mother of an alleged victim (DR) told the officer that her husband had molested the victim, and that the "[v]ictim stated the incident occurred the end part of 2004." (Tr. Vol. IV, at 612.) A domestic violence detective was contacted and advised of the incident, but the detective indicated he would not be responding due to the span of time involved.
 {¶ 13} At trial, the parties entered into a stipulation that Franklin County Children Services caseworker Robin Glove, if called to testify, would state that she interviewed DR on May 6, 2005. During that interview, DR denied any touching or sexual contact by his stepfather. Further, DR did not make eye contact with the caseworker during the interview, and had his back to her while he was talking.
 {¶ 14} Following the presentation of evidence, the jury returned verdicts finding appellant guilty of three counts of rape, and one count of gross sexual imposition. Appellant subsequently filed motions for acquittal and new trial, which the trial court denied. By judgment entry filed July 3, 2006, the trial court imposed consecutive life sentences for the three rape counts, as well as a five-year consecutive sentence for gross sexual imposition.
 {¶ 15} On appeal, appellant sets forth the following assignment of error for this court's review: *Page 5 
 MR. CAUTHON WAS DENIED THE RIGHT TO CONFRONT AND CROSS-EXAMINE WITNESSES, A FAIR TRIAL, AND DUE PROCESS OF LAW, IN VIOLATION OF THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE 1, §§ 10 AND 16 OF THE OHIO CONSTITUTION, WHEN THE COURT IMPROPERLY LIMTED CROSS-EXAMINATION TO PRECLUDE EVIDENCE OF PRIOR SEXUAL MISCONDUCT BY THE VICTIM RELEVANT TO SUPPORT THE DEFENSE THEORY OF THE CASE.
 {¶ 16} Under his sole assignment of error, appellant asserts that a ruling by the trial court denied him the right to confront and cross-examine witnesses. Specifically, that the court's interpretation of Ohio's rape shield statute precluded him from offering a defense that there was an alternative explanation for the conduct alleged. Appellant's argument is based upon his contention that the alleged victim, DR, was involved in several instances of digital-anal sexual activity prior to the alleged conduct in the instant case. Appellant points to records from Children Services, including a report dated March 5, 2003, stating that DR "put his finger up [DCs] butt." (Tr. Vol. II, at 202.) Further, those records also referenced a March 17, 2003 report, indicating that DR's cousin had committed anal penetration against DR and another relative. Appellant argues it is undisputed that both of these incidents occurred prior to the alleged incidents at issue in this case, and during a time when appellant was not living with DR's mother.
 {¶ 17} Appellant contends that one of the arguments raised by the state at trial to suggest DR's testimony was credible was the fact he gave detailed descriptions of the alleged conduct. Appellant argues the defense sought to counter this contention by showing that DR had sexual knowledge, or learned about this behavior, from someone other than appellant, i.e., that the victim's detailed source of sexual knowledge came from *Page 6 
the prior incidents. Appellant maintains that the trial court's failure to allow any cross-examination as to the source of the child's knowledge precluded defense counsel from rebutting the inference that DR could not have provided such details unless appellant actually engaged in the alleged conduct.
 {¶ 18} The record indicates that defense counsel raised this argument prior to opening statement, and that the state objected to the admission of evidence of prior sexual conduct, citing Ohio's rape shield law, R.C.2907.02(D) and (E). Appellant notes that the trial court expressed concern about the impact of a literal application of the statute, but ultimately ruled against appellant, stating in part:
 Well, I do have difficulty with it because I can see what you want to argue and I can see how your argument would be relevant and how the argument makes sense that if the child were to make something up and the child had been victimized in the past in a certain way and points at somebody in the present and said "They did this to me," then the average juror would wonder how could a child of tender years understand any of this behavior unless it really happened.
 So it would seem to me to be relevant that it had happened because somebody else did it in the past, yet this statute flat out says here are the three reasons why you can admit this evidence and there's no other exception.
(Tr. Vol. II, at 211.)
 {¶ 19} Ohio's rape shield statute, R.C. 2907.02(D), provides as follows:
 Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. *Page 7 
 {¶ 20} Thus, Ohio's rape shield statute "essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity," with the limited exceptions being "evidence of the origin of semen, pregnancy, or disease, or of the victim's past sexual activity with the offender." State v. Williams (1986), 21 Ohio St.3d 33, 34. Appellant does not contend that the evidence at issue was admissible as falling within one of the exceptions to the rape shield statute. Rather, appellant contends that the trial court's exclusion of the evidence under the rape shield statute infringed upon his right of confrontation and the ability to present a defense.
 {¶ 21} Ohio courts recognize that "[t]he rape shield statute is not always applied literally, as in some instances, it might infringe upon a defendant's constitutional right to confront witnesses." State v.Brisco (Aug. 24, 2000), Cuyahoga App. No. 76125, citing State v.Gardner (1979), 59 Ohio St.2d 14, 16-17. See, also, In re Michael
(1997), 119 Ohio App.3d 112, 118 ("[application of the rape shield law may not * * * unduly infringe upon a defendant's constitutional rights").
 {¶ 22} The Ohio Supreme Court has held that, in determining whether R.C. 2907.02(D) is unconstitutional as applied, a balancing test must be employed, whereby a court "must thus balance the state interest which the statute is designed to protect against the probative value of the excluded evidence." Gardner, supra, at 17. Further, in order to be admissible, such evidence must involve more than a mere attack on the credibility of a witness. Id.
 {¶ 23} Some of the legitimate state interests to be advanced by Ohio's rape shield law include: "guarding the victims' sexual privacy and preventing them from undue *Page 8 
harassment; discouraging a tendency in sexual assault cases to try the victims rather than the defendant; and, by excluding inflammatory, prejudicial and only marginally probative evidence, aiding in the truthfinding process." State v. Hart (1996), 112 Ohio App.3d 327, 332, citing Gardner, supra, at 17-18. Further, in order "[t]o assess the probative value of excluded evidence, it is necessary to examine its relevance to the issues which it is offered to prove." Id. A trial judge has discretion to determine the relevance of evidence and to apply R.C.2907.02(D) "in the first instance, and we therefore review a judge's action for abuse of discretion." Brisco, supra. However, while the right to confrontation is "flexible enough to allow a judge to exercise discretion in admitting evidence, our review of the constitutional question, should it become necessary, is de novo." Id., citing State v.Ziepfel (1995), 107 Ohio App.3d 646, 652.
 {¶ 24} This court has previously noted the balancing test, enunciated in Gardner, supra, in considering challenges by defendants that application of Ohio's rape shield statute violated their Sixth Amendment right to confrontation. See State v. Hendricks (Sept. 8, 1987), Franklin App. No. 85AP-1066 ("In determining whether the [rape shield] statute was unconstitutionally applied, this court must balance the state's interest in guarding the complainant's sexual privacy against the probative value of the excluded evidence"); State v. Pennington (July 30, 1991), Franklin App. No. 91AP-13 (citing Gardner balancing test in finding no constitutional violation of right to confrontation where defendant, although not permitted to present evidence of bias of stepdaughter, had presented other evidence tending to demonstrate a strong motive to fabricate on the part of victim). *Page 9 
 {¶ 25} In Hendricks, supra, the defendant, similar to appellant in the instant case, sought to introduce evidence that a 12-year-old victim "possessed an independent familiarity with the sexual acts charged and an ability to describe them." This court found no constitutional violation "[g]iven that the victim's knowledge of sexual matters was adequately explained without the excluded evidence." Id.
 {¶ 26} Several other Ohio appellate courts have dealt with the issue of admissibility of such evidence in light of Ohio's rape shield statute. In In re Michael, supra, the appellant was found delinquent by reason of rape, attempted rape, and gross sexual imposition involving alleged conduct with two other juveniles, an eight-year-old and a five-year-old. At trial, appellant attempted to introduce evidence that one of the alleged victims had been sexually abused prior to coming in contact with appellant. The trial court precluded this evidence based upon application of the rape shield statute.
 {¶ 27} On appeal, appellant asserted that the trial court erred in excluding evidence of the alleged victim's sexual history because it prevented appellant from demonstrating an "alternative source" of the victim's knowledge of sexual conduct or activity. In addressing this issue, the court in In re Michael, supra, at 120-121, cited two cases from other jurisdictions, State v. Pulizzano (Wis. 1990), 155 Wis.2d 633,456 N.W.2d 325, and Summitt v. State (Nev. 1985), 101 Nev. 159,697 P.2d 1374, in finding such evidence relevant to appellant's defense, holding in part:
 In both Pulizzano and Summitt, the defendants sought to introduce evidence at trial of prior sexual experiences of the child victims to show that the victims had independent knowledge of sexual acts. The trial courts excluded the evidence under each state's rape shield law. The supreme courts, however, concluded that the defendants' right to present the evidence was paramount to the state's interest in *Page 10 
excluding the evidence. The reasoning behind this conclusion was succinctly stated by the Pulizzano court:
 The inference that [the child victim] could not possess the sexual knowledge he does unless [the defendant] sexually assaulted the children greatly bolsters [the child victim's] allegations. In order to rebut that inference, [the defendant] must establish an alternative source for [the child victim's] sexual knowledge. Evidence of the prior sexual assault is therefore a necessary and critical element of [the defendant's] defense. Pulizzano, 456 N.W.2d at 334.
 The defendants in Pulizzano and Summitt both denied having committed the offenses with which they were charged, and the state did not present any physical evidence of the alleged abuse.
 The unfortunate situation with which we are confronted is similar to that with which the Pulizzano and Summitt courts were confronted. We have a child who had previously been abused and who has allegedly been abused again. The defense wished to use this prior sexual abuse to show that [the child victim] already had sexual knowledge beyond his years, thus permitting the conclusion that such sexual knowledge was not attributable to [appellant]. Although evidence of [the child victim's] prior sexual abuse would intrude on an intimate detail of his personal life, such intrusion was not to harass, degrade, or embarrass him, or to generally attack his credibility by implying that he was immoral or unchaste. Obviously, this is not a rape case where evidence of the victim's prior, consensual, sexual encounters is sought to be introduced to infer consent. * * *
 We agree with the Summitt court that the average factfinder would consider a child of [the child victim's] age to be a sexual innocent. Therefore, the factfinder would believe the sexual experience he described must have occurred in connection with the incident being prosecuted; otherwise, he could not have described it. * * * Here, evidence that [the child victim] had been sexually abused in the past was essential to [appellant's] defense, particularly where, as here, [the child victim] had been sexually abused in the identical manner [in] which he claims to have been abused by [appellant]. *Page 11 
 {¶ 28} We note that the court in In re Michael affirmed the trial court's judgment because the defense was able to elicit testimony regarding the victim's prior sexual abuse during its cross-examination of a physician. The court noted, however, that "if the trial court in this case had excluded all evidence of [the child victim's] prior sexual abuse, such ruling would have been unreasonable." Id., at 121.
 {¶ 29} In a case relied upon by the state, State v. Guthrie (1993),86 Ohio App.3d 465, 468, the trial court, citing Ohio's rape shield statute, refused to allow evidence of allegations of prior sexual abuse by three victims where the appellant sought to introduce such evidence for the sole purpose of showing that the victims' ability to describe certain sexual activity "may have resulted from an experience other than the offense allegedly committed by appellant." On appeal, the court inGuthrie found that it was within the trial court's discretion to determine the relevancy of evidence, and that the trial court's refusal to admit evidence of the prior allegations of sexual abuse did not conflict with Ohio law, nor did it constitute an abuse of discretion.
 {¶ 30} In Guthrie, however, unlike the facts of the instant case, the appellant made an oral statement to an investigator admitting to several of the claims of sexual conduct, thus greatly diminishing the probative value of the challenged evidence. See, also, State v. Hennis, Clark App. No. 2003 CA 21, 2005-Ohio-51, at ¶ 49 (noting that, under the facts ofGuthrie, "the defendant admitted to having some sexual contact with the victim, thus the court found that the victim's history of sexual abuse was not probative because whether or not the victims had previously accused another of sexual abuse did not prove or disprove defendant's guilt of the crime charged"). See, also, State v. Black, Hardin App. No. 6-06-08, 2007-Ohio-3133, at ¶ 13 (noting that in Guthrie the appellate court *Page 12 
upheld the trial court's exclusion of evidence of child victims' prior sexual abuse "because it was not material to a fact at issue given the defendant had admitted to the offenses"). A further distinguishing characteristic raised by the appellant in In re Michael, and apparently found significant by that court, was that the probative value of the evidence was greater than in Guthrie because such evidence would not merely show "prior general sexual activity" between the victim and another, but would show that the victim "had previously been sexually abused in a manner identical to that which he claims to have been abused" by the appellant. (Emphasis sic.) In re Michael, supra, at 120. Finally, in Guthrie, supra, the court recognized that a trial court is required to determine, in the first instance, whether the prejudicial nature of evidence regarding a victim's past sexual history is outweighed by the probative value of the evidence with respect to a material fact at issue.
 {¶ 31} In the present case, because of the trial court's ruling that the rape shield statute precluded any inquiry as to prior sexual conduct, the trial court did not engage in a balancing of the state interest under the statute against the probative value of the excluded evidence and appellant's right to fair trial, nor did the trial court consider more generally, under Evid.R. 403(A), whether the relevance of this evidence was outweighed by its inflammatory character and the danger of unfair prejudice. As previously noted, the trial court, in addressing defense counsel's request to cross-examine on this issue, acknowledged it could "see how [the] argument would be relevant and how the argument makes sense" if the child had been abused in the past and were to make a false allegation against appellant, and the court further recognized, under such circumstances, that "the average juror would wonder how could a child of tender years understand any of *Page 13 
this behavior unless it really happened." (Tr. Vol. II, at 211.) However, while the trial court apparently viewed the evidence as "relevant," it felt it was constrained by the rape shield statute from considering its probative value to appellant's defense.
 {¶ 32} Appellant argues that such evidence was particularly probative in this case where the prosecutor questioned one of the state's witnesses, Sha Clark, a social worker from Children's Hospital, about whether children are ever coached into making false allegations. Clark responded that children who have been coached or who are making false allegations "have a difficult time giving details, specifics regarding the incident." (Tr. Vol. II, at 374.) Clark responded affirmatively when asked whether "lack of detail" is one of the indicators she considers in determining whether a child is being truthful. (Tr. Vol. II, at 375.) Appellant notes that, during closing argument, the prosecutor highlighted Clark's testimony on this issue, arguing in part that Clark cited the significance of "[d]etails," that "[s]he said he [DR] had details," and stating that "[a] lot of times when kids are coached, they can't give you those details." (Tr. Vol. IV, at 643.)
 {¶ 33} Upon review, we conclude that the trial court's blanket exclusion of the evidence at issue, solely on the basis that such evidence did not fit within one of the exceptions under the rape shield statute, was error. Rather, based on Gardner, supra, the trial court must engage in balancing the state's interest which the statute is designed to protect against the probative value of the excluded evidence. The record supports appellant's contention that the prosecution highlighted the victim's ability to provide details of the sexual conduct allegedly committed by appellant. Here, we conclude that appellant was entitled to have the trial court assess whether the evidence was relevant to the *Page 14 
theory presented, and, thus, constituted a material fact, and whether application of the rape shield statute was unconstitutional as applied to the facts.[1]
 {¶ 34} We note, however, that prior to the court's ruling as to the application of the rape shield statute, the prosecution challenged whether one of the two instances of alleged prior sexual activity occurred. Specifically, while Franklin County Children Services' records contain a report citing an allegation that DC indicated DR tried to sexually assault him, the prosecutor indicated on the record that this incident "was unsubstantiated by Children's Services because when everybody was talked to everybody denied it." (Tr. Vol. II, at 208.) As to the second incident, the prosecutor acknowledged that DR's cousin "admitted to the behavior" with DR. (Tr. Vol. II, at 209.) The Franklin County Children Services' records contain a notation that, in 2003, DR "was physically and sexually attacked by his cousin," and that the cousin "admits to attacking and performing anal sex" on DR. Here, the probative value as to any prior acts would be dependent upon "clear proof that they occurred." State v. Budis (N.J. 1991), 593 A.2d 784, 790.
 {¶ 35} The issue then becomes whether the exclusion of this evidence was critical to appellant's theory that there was an alternative source for the victim's sexual knowledge, and whether the trial court should have exercised its discretion and allowed admission of the evidence if the facts and circumstances were such that the jury would otherwise infer that appellant had to have been the source of that knowledge. SeeIn re Michael, supra, at 121 (finding evidence of prior sexual abuse of child victim relevant to *Page 15 
rebut inference that "the factfinder would believe the sexual experience he described must have occurred in connection with the incident being prosecuted; otherwise, he could not have described it").
 {¶ 36} While we conclude that the trial court erred in not engaging in the requisite balancing under Gardner, we decline to reverse for a new trial at this time. Rather, in light of the record on appeal, we remand this matter for the trial court to conduct a hearing and, in the first instance, engage in the appropriate balancing analysis to determine whether appellant's constitutional right to confrontation requires that evidence as to prior alleged sexual activity should have been admitted, even assuming it would otherwise be excluded by the rape shield statute. If, upon remand, the trial court determines that appellant's right to confrontation outweighs the state's interest in excluding this evidence, and that the probative value of the evidence at issue outweighs its prejudicial effect with respect to a material fact at issue, the trial court is instructed to vacate appellant's conviction and grant a new trial. Otherwise, the trial court shall reinstate the judgments of conviction. See, e.g., State v. Boggs (1992), 63 Ohio St.3d 418, 424
(following defendant's trial and conviction, matter remanded to trial court to conduct in camera hearing to determine, in first instance, whether evidence proffered by defense was properly excluded as involving activity protected by rape shield statute).
 {¶ 37} Based upon the foregoing, appellant's assignment of error is sustained to the limited extent that this matter is remanded to the Franklin County Court of Common Pleas to conduct further proceedings in accordance with law and consistent with this opinion.
 Cause remanded with instructions. *Page 16 
SADLER, P.J., and PETREE, J., concur.
[1] We note that, while DR's stepbrother also provided testimony as to a bedroom incident, DR provided the sole testimony regarding the two alleged incidents in the bathroom. *Page 1