OPINION
{¶ 1} Defendant-appellant, N.D.C., [1] appeals from the judgment of the Franklin County Court of Common Pleas reinstating the judgment of conviction following a remand from this court.
 {¶ 2} On June 17, 2005, appellant was indicted on four counts of rape, in violation of R.C. 2907.02, and one count of gross sexual imposition, in violation of R.C. 2907.05. A jury trial began on June 15, 2006. The jury returned verdicts finding appellant guilty of three counts of rape and one count of gross sexual imposition. Subsequent motions for acquittal and a new trial were denied by the trial court. By judgment entry filed July 3, *Page 2 
2006, the trial court imposed consecutive life sentences for the rape convictions and a five-year consecutive sentence for the gross sexual imposition conviction. Appellant timely appealed to this court and asserted a single assignment of error. State v. N.D.C., Franklin App. No. 06AP-790, 2007-Ohio-5088 ("N.D.C. I").
 {¶ 3} The underlying facts of the convictions were set forth inN.D.C. I, as follows:
 In April 2005, "DR," then age 12, resided with his mother (hereafter "DR's mother") and his two younger stepbrothers, "DC," age seven, and "NC," age eight, in Columbus, Ohio. Appellant is the father of DC and NC, and the stepfather of DR; appellant began dating DR's mother when DR was three years of age.
 On April 1, 2005, appellant moved back to DR's mother's residence after being away for a period of time. The state's theory of the case was that appellant sexually assaulted DR on three separate occasions, over an approximate two-week period in early April 2005, while DR's mother was at work. DR testified that two of the incidents occurred when he was cleaning the bathroom; specifically, on both occasions, appellant entered the bathroom, pulled down DR's pants, and inserted his finger inside DR's anus. DR related a third incident in which appellant told him to go to his mother's bedroom, take off his clothes, and lie on the bed. DR testified that, as he was lying face down on the bed, appellant got on top of him and "put his penis inside my butt." (Tr. Vol. II, at 266.)
 DR's younger brothers both testified regarding the alleged incident in the bedroom. Specifically, DR's brother, NC, testified that he observed his "dad on top of my brother" while looking through a vent located in his bedroom. (Tr. Vol. III, at 445.) DR's other brother, DC, testified that he looked through his mother's bedroom door and observed his father on top of DR on the bed. According to DC, his father "[p]ut his private part in my brother's behind." (Tr. Vol. III, at 478.) Appellant noticed DC standing near the bedroom door, and he grabbed a belt and struck DC on the legs.
 Sha Clark is a medical social worker at Children's Hospital. On May 23, 2005, Clark conducted an interview with DR at Children's Hospital. During the interview, DR indicated that, *Page 3 
on several occasions, he had been a victim of sexual abuse by appellant. DR related that appellant had touched his private parts, and he described different incidents occurring in the bathroom and one incident that occurred in the bedroom.
 Dr. Ellen McManus, an emergency medical physician at Children's Hospital, conducted a physical examination of DR on May 23, 2005. The physician noted nothing abnormal during the examination.
 In April 2005, DR's mother was employed and worked first shift hours. Approximately two weeks after appellant had moved back to her residence, DR's mother noticed some marks on DC's legs. She asked NC about the marks on DC's legs, and NC told her appellant "had whooped him for getting in trouble at school." (Tr. Vol. III, at 528.) Appellant moved out of the house on April 15, 2005, and, on May 16, 2005, DR's mother learned of the alleged incident involving appellant and DR. She phoned the police, and subsequently took the boys to Children's Hospital.
 On cross-examination, DR's mother acknowledged that she had concerns about appellant's sexuality, fearing he might do something sexually inappropriate to her children. When she asked DR whether any inappropriate activity had occurred, he repeatedly told her nothing had happened.
 The first witness for the defense was an uncle of DR's (hereafter "DR's uncle"). In the spring of 2005, DR's uncle had a conversation with DR about alleged sexual contact, and DR denied having any such contact with appellant. DR's uncle testified that DR told him about threats his mother made to him (DR).
 Kathleen Cooke is a private investigator who investigated the allegations at the request of defense counsel. As part of the investigation, Cooke interviewed DR's mother, who informed Cooke that she started a new job on April 7, 2005.
 On May 17, 2005, Columbus Police Officer Wendell J. Tolber responded to a 911 call at an address on Maryland Avenue. According to Officer Tolber's report, the mother of an alleged victim (DR) told the officer that her husband had molested the victim, and that the "[v]ictim stated the incident occurred the end part of 2004." (Tr. Vol. IV, at 612.) A domestic violence detective was contacted and advised of the incident, but the *Page 4 
detective indicated he would not be responding due to the span of time involved.
 At trial, the parties entered into a stipulation that Franklin County Children Services caseworker Robin Glove, if called to testify, would state that she interviewed DR on May 6, 2005. During that interview, DR denied any touching or sexual contact by his stepfather. Further, DR did not make eye contact with the caseworker during the interview, and had his back to her while he was talking.
Id. at ¶ 3-13.
 {¶ 4} In N.D.C. I, appellant raised one assignment of error, which essentially alleged the trial court's interpretation of Ohio's rape shield law precluded him from offering a defense that there was an alternative explanation for the conduct alleged. Specifically, appellant argued the alleged victim, DR, was involved in several instances of digital anal sexual activity prior to the alleged conduct in the instant case. In support, appellant pointed to two 2003 reports from Children Services stating that "DR `put his finger up DC's butt'" and that DR's cousin committed anal penetration against DR and another relative. Id. at ¶ 16.
 {¶ 5} After review, this court concluded the trial court's blanket exclusion of the evidence at issue, solely on the basis that such evidence did not fit within one of the exceptions under the rape shield statute, was error. This court held, based on State v. Gardner (1979),59 Ohio St.2d 14, the trial court was required to balance the state's interest which the statute is designed to protect against the probative value of the excluded evidence, and that appellant was entitled to have the trial court assess whether the evidence was relevant to the theory presented, and, thus, constituted a material fact, and whether application of the rape shield statute was unconstitutional as applied to the facts. This court then stated: *Page 5 
 While we conclude that the trial court erred in not engaging in the requisite balancing under Gardner, we decline to reverse for a new trial at this time. Rather, in light of the record on appeal, we remand this matter for the trial court to conduct a hearing and, in the first instance, engage in the appropriate balancing analysis to determine whether appellant's constitutional right to confrontation requires that evidence as to prior alleged sexual activity should have been admitted, even assuming it would otherwise be excluded by the rape shield statute. If, upon remand, the trial court determines that appellant's right to confrontation outweighs the state's interest in excluding this evidence, and that the probative value of the evidence at issue outweighs its prejudicial effect with respect to a material fact at issue, the trial court is instructed to vacate appellant's conviction and grant a new trial. Otherwise, the trial court shall reinstate the judgments of conviction. See, e.g., State v. Boggs (1992), 63 Ohio St.3d 418, 424 (following defendant's trial and conviction, matter remanded to trial court to conduct in camera hearing to determine, in first instance, whether evidence proffered by defense was properly excluded as involving activity protected by rape shield statute).
Id. at ¶ 36.
 {¶ 6} Upon remand from this court, the trial court conducted a hearing on December 21, 2007. Neither party offered new evidence, but both parties presented arguments based on relevant case law and the evidence admitted and/or offered at trial. After the hearing, the trial court rendered a decision on February 19, 2008, stating, in part:
 * * * The FCCS March 5, 2003, report would be relevant and probative if the allegations were substantiated. However, this incident was investigated and all involved denied the behavior. The probative value of this unsubstantiated report is nil. Most certainly there is no clear proof that the allegations in the March 5, 2003, FCCS report actually occurred. When weighted against the State's interest protected by the Rape Shield Law, the State's interest prevails.
 * * * *Page 6 
 * * * The FCCS March 17, 2003, report concerning DR's cousin committing anal penetration of DR is probative and relevant. * * *
 The evidentiary value of the FCCS report must be considered in light of the eyewitness testimony of these three children. * * * When this diminished evidentiary value is compared to the State's interest protected by the Rape Shield Statute, the State's interest prevails.
 With all due respect to the appellate court, the child victim's testimony concerning the sexual conduct itself was not very detailed. This is common with child sexual assault victims. DR's testimony was, however, detailed concerning the events surrounding the assaults, i.e., events leading up to and following, locations, witnesses to the bedroom assault and what happened to the witnesses after the fact. Having seen and heard the trial it is apparent to this Court that the "details" referenced in Clark's testimony and the prosecution argument were not sexual conduct detail but rather situational detail. When viewed in this light, the evidence of alleged prior sexual experiences of the child victim is much less important to the defendant's case. The defendant presented a vigorous defense. DR's mother, DR's uncle, and through stipulation, Robin Glove of FCCS all testified that DR denied any sexual contact by his stepfather. Dr. Ellen McManus noted nothing abnormal during the physical examination of DR. DR's mother admitted that DR's brother, NC, told her originally that appellant "had whooped him for getting in trouble at school." (Tr. Vol. III, at 528.) Defense counsel thoroughly cross examined DR's mother on matters of bias and prejudice toward the defendant and coaching of the child witnesses. It is simply untrue that the defendant was left defenseless without the evidence of DR's alleged prior sexual experience.
 Accordingly, when this Court balances the State's interest which the Rape Shield Statute is designed to protect against the probative value of the excluded evidence, the State's interest prevails.
 The judgment of conviction is reinstated.
Id. at 6-8. *Page 7 
 {¶ 7} It is from this judgment appellant appeals and brings the following two assignments of error for our review:
 First Assignment of Error:
 Mr. Cauthon was denied the right to confront and cross-examine witnesses, a fair trial, and due process of law, in violation of the fifth, sixth
and fourteenth amendments to the U.S. Constitution and Article I, §§ 10 and 16 of the Ohio Constitution, when the court improperly limited cross-examination to preclude evidence of prior sexual misconduct by the victim relevant to support the defense theory of the case.
 Second assignment of Error:
 Mr. Cauthon was denied due process of law, in violation of the fifth, sixth and fourteenth amendments to the U.S. Constitution and Article I, §§ 10 and 16 of the Ohio Constitution, when the indictment failed to allege a culpable mental state.
 {¶ 8} Though appellant reiterates in the current appeal much of what he argued in N.D.C. I, because the remand issued by this court was limited, we are concerned only with those arguments pertaining to the trial court's actions on remand. On remand, the trial court was instructed to conduct a hearing to engage in the appropriate balancing analysis to determine whether appellant's constitutional right to confrontation required that evidence as to prior alleged sexual activity should have been admitted, even assuming it would otherwise be excluded by the rape shield statute. R.C. 2907.02(D) provides:
 Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value. *Page 8 
 {¶ 9} It is within the sound discretion of the trial court to determine the relevance of evidence and to apply the rape shield law to best meet the purposes behind the statute. In re Michael,119 Ohio App.3d 112, citing State v. Leslie (1984), 14 Ohio App.3d 343. See, also, State v. Egli, Portage App. No. 2007-P-0052, 2008-Ohio-2507 (the evidentiary determination of a trial court under R.C. 2907.02 should not be disturbed on appeal absent a showing of an abuse of discretion, which is the same standard used when reviewing a determination by a trial court weighing the probative value of evidence with the danger of unfair prejudice); State v. Wyant, Stark App. No. 2007CA00265, 2008-Ohio-4361. An "abuse of discretion" means more than an error of law or judgment. Rather, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, citing State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 10} Appellant contends the probative nature of the evidence outweighs the prejudicial effect of admitting evidence of the victim's alleged prior sexual conduct. This is so because appellant contends he sought to introduce the evidence for the purpose of showing that the alleged victim's ability to describe sexual activity may have resulted from an experience other than the offenses allegedly committed by appellant. After review, however, we do not find that the trial court abused its discretion.
 {¶ 11} In State v. Miller (1989), 63 Ohio App.3d 479, the defendant sought to have evidence of the victim's abuse by her father admitted into evidence to show an alternate source of knowledge of sexual function or ulterior motive. The trial court, after conducting the appropriate balancing test excluded the evidence. In affirming the trial court, the appellate court stated, "the rape shield law, when considered in conjunction with *Page 9 
Evid. R. 608, `does not provide for impeachment of reputation for truth-telling by evidence of a victim's past sexual conduct which tends to show that she may have the ability to fabricate a new but fictitious story.'" (Emphasis sic.) Id. at 483.
 {¶ 12} Here, the trial court engaged in the balancing as it was instructed to do by this court, and the trial court used its discretion to prevent the introduction of information that was in direct contravention of the rape shield statute. As indicated previously, the trial court found the relevant and probative value of the March 5, 2003 report to be nil. The trial court also noted the corroborating evidence of DR's younger brothers to one of the incidents at issue greatly diminished the probative value of the challenged evidence. Additionally, the trial court found the probative value of the challenged evidence was diminished by DR's detailed testimony concerning the events surrounding the assaults. The trial court then concluded the state's interest in this matter prevailed, and upon review, we do not find the trial court abused its discretion in so finding. Accordingly, we overrule appellant's first assignment of error.
 {¶ 13} In his second assignment of error, appellant contends the indictment failed to allege a culpable mental state. Insofar as the instant appeal is the result of a limited remand previously issued by this court, res judicata bars appellant from raising this issue in this appeal. "Where an argument could have been raised on an initial appeal,res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand." State v. D'Ambrosio
(1995), 73 Ohio St.3d 141, 143. State v. Gray, Franklin App. No. 06AP-10, 2006-Ohio-4595. Appellant's argument regarding his indictment was not raised as an error in his initial appeal to this court. As such, appellant *Page 10 
is precluded from raising that issue in this appeal. Accordingly, we overrule appellant's second assignment of error.
 {¶ 14} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.
[1] For purposes of anonymity, initials will be used throughout this opinion. *Page 1