[Cite as *State v. N.D.C.*, 2015-Ohio-3643.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 15AP-63 |
| v. | : | (C.P.C. No. 05CR-4139) |
| N.D.C., | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 8, 2015

*Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher,* for appellee.

*Joseph R. Landusky, II,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, N.D.C., appeals from a judgment of the Franklin County Court of Common Pleas, denying his motion for leave to file a delayed motion for a new trial. On appeal, defendant raises the following sole assignment of error for our review:

> THE TRIAL COURT ERRED IN DENYING DEFANDANT'S MOTION FOR LEAVE TO FILE A DELAYED MOTION FOR A NEW TRIAL.

Because the trial court did not abuse its discretion in denying the motion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The relevant underlying facts of this case were set forth in detail in *State v. N.D.C.*, 10th Dist. No. 06AP-790, 2007-Ohio-5088 ("*N.D.C.* I"), as follows:

On June 17, 2005, appellant was indicted on four counts of rape, in violation of R.C. 2907.02, and one count of gross sexual imposition, in violation of R.C. 2907.05. The matter came for trial before a jury beginning on June 15, 2006.

In April 2005, "DR," then age 12, resided with his mother (hereafter "DR's mother") and his two younger stepbrothers, "DC," age seven, and "NC," age eight, in Columbus, Ohio. Appellant is the father of DC and NC, and the stepfather of DR; appellant began dating DR's mother when DR was three years of age.

On April 1, 2005, appellant moved back to DR's mother's residence after being away for a period of time. The state's theory of the case was that appellant sexually assaulted DR on three separate occasions, over an approximate two-week period in early April 2005, while DR's mother was at work. DR testified that two of the incidents occurred when he was cleaning the bathroom; specifically, on both occasions, appellant entered the bathroom, pulled down DR's pants, and inserted his finger inside DR's anus. DR related a third incident in which appellant told him to go to his mother's bedroom, take off his clothes, and lie on the bed. DR testified that, as he was lying face down on the bed, appellant got on top of him and "put his penis inside my butt." (Tr. Vol. II, at 266.)

DR's younger brothers both testified regarding the alleged incident in the bedroom. Specifically, DR's brother, NC, testified that he observed his "dad on top of my brother" while looking through a vent located in his bedroom. (Tr. Vol. III, at 445.) DR's other brother, DC, testified that he looked through his mother's bedroom door and observed his father on top of DR on the bed. According to DC, his father "[p]ut his private part in my brother's behind." (Tr. Vol. III, at 478.) Appellant noticed DC standing near the bedroom door, and he grabbed a belt and struck DC on the legs.

* * *

Dr. Ellen McManus, an emergency medical physician at Children's Hospital, conducted a physical examination of DR on May 23, 2005. The physician noted nothing abnormal during the examination.

* * *

> The first witness for the defense was an uncle of DR's (hereafter "DR's uncle"). In the spring of 2005, DR's uncle had a conversation with DR about alleged sexual contact, and DR denied having any such contact with appellant. DR's uncle testified that DR told him about threats his mother made to him (DR).
>
> * * *
>
> At trial, the parties entered into a stipulation that Franklin County Children Services caseworker Robin Glove, if called to testify, would state that she interviewed DR on May 6, 2005. During that interview, DR denied any touching or sexual contact by his stepfather. Further, DR did not make eye contact with the caseworker during the interview, and had his back to her while he was talking.
>
> Following the presentation of evidence, the jury returned verdicts finding appellant guilty of three counts of rape, and one count of gross sexual imposition. Appellant subsequently filed motions for acquittal and new trial, which the trial court denied. By judgment entry filed July 3, 2006, the trial court imposed consecutive life sentences for the three rape counts, as well as a five-year consecutive sentence for gross sexual imposition.

*Id.* at ¶ 2-14.

{¶ 3}  In *N.D.C.* I, defendant asserted that the trial court erred in denying his motion for a new trial. Specifically, defendant argued that the trial court's application of Ohio's rape shield laws denied him the right to confront the witnesses against him. We concluded that "the trial court's blanket exclusion of the evidence at issue, solely on the basis that such evidence did not fit within one of the exceptions under the rape shield statute, was error." *Id.* at ¶ 33. We declined to reverse for a new trial, however, and instead "remand[ed] this matter to the trial court to conduct a hearing and, in the first instance, engage in the appropriate balancing analysis to determine whether appellant's constitutional right to confrontation requires that evidence as to prior alleged sexual activity should have been admitted." *Id.* at ¶ 36.

{¶ 4}  Upon remand, the trial court conducted the hearing and ultimately reinstated the judgment of conviction.  The court rendered a decision on February 19, 2008, noting as follows:

> With all due respect to the appellate court, the child victim's testimony concerning the sexual conduct itself was not very detailed. This is common with child sexual assault victims. DR's testimony was, however, detailed concerning the events surrounding the assaults, i.e., events leading up to and following, locations, witnesses to the bedroom assault and what happened to the witnesses after the fact. Having seen and heard the trial it is apparent to this Court that the "details" referenced in Clark's testimony and the prosecution argument were not sexual conduct detail but rather situational detail. When viewed in this light, the evidence of alleged prior sexual experiences of the child victim is much less important to the defendant's case. The defendant presented a vigorous defense. DR's mother, DR's uncle, and through stipulation, Robin Glove of FCCS all testified that DR denied any sexual contact by his stepfather. Dr. Ellen McManus noted nothing abnormal during the physical examination of DR. DR's mother admitted that DR's brother, NC, told her originally that appellant "had whooped him for getting in trouble at school." (Tr. Vol. III, at 528.) Defense counsel thoroughly cross examined DR's mother on matters of bias and prejudice toward the defendant and coaching of the child witnesses. It is simply untrue that the defendant was left defenseless without the evidence of DR's alleged prior sexual experience.
>
> Accordingly, when this Court balances the State's interest which the Rape Shield Statute is designed to protect against the probative value of the excluded evidence, the State's interest prevails.

*State v. N.D.C.*, 10th Dist. No. 08AP-217, 2008-Ohio-6120, ¶ 6 ("*N.D.C.* II"). In *N.D.C.* II, we affirmed the trial court's decision reinstating defendant's convictions. Some time after our decision in *N.D.C.* II, defendant learned that D.R., D.C., and N.C. had recanted their trial testimony.

{¶ 5} Defendant filed the instant motion for leave to file a delayed motion for new trial on December 5, 2014, asserting that he had recently discovered that the alleged victim stated "under oath, that he testified untruthfully at trial and the offenses of conviction did not occur." (Motion for Leave, 1.) Defendant asserted that, although D.R. admitted that he "came forward a couple of months after the trial and stated he was not sexually abused by [defendant]," no one "did anything with [D.R.'s] recantation until it came to the attention of Defendant in the past 2 years." (Motion for Leave, 6.) Defendant

noted that D.R., D.C., and N.C. first met with defendant's current counsel on August 2, 2013, and that the boys signed affidavits memorializing their recantations on November 21, 2014. Defendant accordingly asserted that the evidence "presented in these affidavits was not available at the time of trial and could not have been reasonably discovered through the exercise of due diligence," as "[o]ne can not force people to tell the truth." (Motion for Leave, 7.)

{¶ 6} In their November 21, 2014 affidavits, D.R., D.C., and N.C. all stated that they had recanted their trial testimony shortly after the trial. D.R. averred that, "[w]ithin a couple of months after the trial" he "again told the truth that [he] was not sexually abused by [defendant]." (D.R. Affidavit, ¶ 10.) D.R. explained that, when he initially denied being sexually abused by defendant, his mother "whipped [him] with a belt and with her hands * * * she punched [him] in [his] face and she demanded that [he] tell the truth. This meant that [he] was coached by her to lie about [his] stepfather." (D.R. Affidavit, ¶ 6.) D.R. explained that he "felt a huge amount of pressure from [his] mom and [he] finally gave in and said what she wanted [him] to say." (D.R. Affidavit, ¶ 7.) D.R. stated that, for as long as he could remember, his mother had "falsely accused people of sex abuse." (D.R. Affidavit, ¶ 9.) D.R. averred that defendant was "in prison for something he did not do." (D.R. Affidavit, ¶ 11.) N.C. stated that he "told [his] mom 1 month after trial that [his] dad [was] innocent." (N.C. Affidavit, ¶ 9.) D.C. averred that "[f]or years [he] [has] been telling others that [his] father never molested [his] brother." (D.C. Affidavit, ¶ 9.) N.C.'s and D.C.'s affidavits corroborated D.R.'s statements regarding their mother's influence on their testimonies.

{¶ 7} The state filed a memorandum contra to the motion for leave on December 11, 2014. The state noted that defendant had knowledge of the purported recantations more than five years ago, because "in June 2010, the defendant submitted to the Court a letter from the defendant's former attorney, dated December 1, 2009, which detailed the inquiry former counsel had conducted into the same claim defendant now presents, i.e., that the victim and witnesses had recanted their testimony." (Memo Contra, 11.) The state thus asserted that defendant failed to act with reasonable diligence after discovering this evidence.

{¶ 8}   The record contains a December 1, 2009 letter from attorney Richard Cline. In the letter, Cline explains that, after he was appointed to represent defendant in his first appeal, defendant contacted Cline and asked if he would be "willing to assist [defendant] in preparing and filing a motion for new trial based on newly discovered evidence." (Cline Letter, 1.) Cline stated that the "basis for the motion was that the alleged victim and the two witnesses * * * had recanted their trial testimony and were now willing to testify that [N.D.C.] did not commit the criminal acts with which he was charged." (Cline Letter, 1.) Cline stated that he "explained to [N.D.C.] that he would have to retain counsel" to file the motion for new trial, and that Cline would not work on the matter until his "retainer was paid." (Cline Letter, 1-2.) Defendant eventually paid Cline, and Cline was able to secure one meeting with the boys.

{¶ 9}   During that meeting, "the boys made statements to [Cline] that raised issues about whether they were truly recanting their trial testimony.  The boys did state that their trial testimony was false, but were unable or unwilling to explain why they gave  false testimony at  trial." (Cline Letter, 2.) Cline felt that without an explanation, the boys' recantations would not support a motion for a new trial based on newly discovered evidence. Cline was never able to speak with the boys again, however, as their mother refused to make them available for a second interview. Cline noted that, "[a]t this point, it may be that the only affidavit that will be available to [N.D.C.] to support his motion will be my affidavit recounting the conversation I had with each of the boys." (Cline Letter, 3.) Defendant eventually fired Cline and sought a refund of the retainer fee.

{¶ 10} The record also contains a May 9, 2010 handwritten letter from defendant to the trial court judge. In the letter, defendant notes that the judge may be unaware "of the most recent recantations involved with [the] case," and informs the judge that "all three kids went to my former lawyer Richard Cline and told him that they lied at trial." (Defendant's Letter to Judge Hogan, 1.) Defendant asked the judge if he could "subpoena the family to your chambers for a deposition," to show that the "kids were pressured into lieing [sic] in the first place." (Defendant's Letter to Judge Hogan, 2.)

{¶ 11} The trial court denied defendant's motion for leave to file a delayed motion for new trial on December 30, 2014. The court reviewed the record, and observed that defendant "had knowledge of the purported recantations more than five years ago."

(Decision, 3.) The court noted that, "[s]pecifically, four and one-half years ago, in June 2010, the defendant submitted to the Court a letter from the defendant's former attorney, dated December 1, 2009, which detailed the inquiry former counsel had conducted into the same claim defendant now presents." (Decision, 3.) The court also observed that "defendant's current counsel asserts that he was aware of the defendant's claim more than one year ago." (Decision, 3.) As such, the court concluded that, "[u]nquestionably, the defendant failed to act with reasonable diligence given his failure to present this information within a reasonable time after discovering it." (Decision, 4.)

## II. TRIAL COURT PROPERLY DENIED THE MOTION

{¶ 12} Crim.R. 33 governs motions for new trial in criminal proceedings. Crim.R. 33(A) provides the grounds upon which a defendant may receive a new trial. As relevant here, Crim.R. 33(A)(6) provides that a defendant may be granted a new trial "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Regarding the timing of a motion for new trial based on newly discovered evidence, the rule states as follows:

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

Crim. R. 33(B). *See also State v. Walden*, 19 Ohio App.3d 141 (1oth Dist.1984).

{¶ 13} Thus, if a defendant fails to file a motion for a new trial based on newly discovered evidence within 120 days of the jury's verdict or the court's decision, he or she must seek leave from the trial court to file a delayed motion. To obtain such leave, the defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120 days. *See Cross v.*

*Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus (holding that clear and convincing evidence is evidence which "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established"). A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *See State v. Lee,* 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 7; *State v. Carr,* 10th Dist. No. 02AP-1240, 2003-Ohio-2947, ¶ 11. *See also State v. Petro*, 148 Ohio St. 505 (1947), syllabus (setting forth a six-part test for determining whether a motion for new trial on the basis of newly discovered evidence should be granted, and holding that the new evidence must "not merely impeach or contradict the former evidence").

{¶ 14} "We will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial absent an abuse of discretion." *State v. Townsend*, 10th Dist. No. 08AP-371, 2008-Ohio-6518, ¶ 8, citing *State v. Schiebel*, 55 Ohio St.3d 71, 76 (1990). "The abuse of discretion standard of review also applies to Crim.R. 33(B) motions for leave to file a delayed motion for new trial." *Id.* at ¶ 8. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 15} Here, defendant failed to file his motion for new trial based upon newly discovered evidence within 120 days after the verdict. As such, defendant was required to show by clear and convincing proof that he was unavoidably prevented from discovering the new evidence. In his December 5, 2014 motion for leave, defendant claimed that the recantations came to defendant's attention "in the past 2 years." (Motion for Leave, 1, 6.) However, the record demonstrates that defendant was aware of the recantations at least by 2009, when he retained Cline to file a motion for new trial based on the recantations.

{¶ 16} A " 'trial court may require a defendant to file his motion for leave to file within a reasonable time after he discovers the evidence.' " *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 37, quoting *State v. Griffith*, 11th Dist. No. 2005-T-0038,

2006-Ohio-2935, ¶ 15. Thus, even if a defendant has established that they were unavoidably prevented from filing their motion for a new trial within the time limits, if there was an "undue delay in filing the motion after the evidence was discovered, the trial court must determine if that delay was reasonable under the circumstances or that the defendant has adequately explained the reason for the delay." *State v. Stansberry*, 8th Dist. No. 71004 (Oct. 9, 1997). *See also State v. York*, 2d Dist. No. 2000 CA 70 (Apr. 6, 2001).

{¶ 17} Defendant failed to offer a sufficient explanation for his five-year delay in filing the motion. Notably, defendant did not file an affidavit or any other evidence explaining what occurred between 2009 and 2014 to prevent him from filing the motion for leave based on the recantations. *Compare State v. Blakely*, 6th Dist. No. L-12-1034, 2013-Ohio-1080, ¶ 17 (holding that the trial court did not err in denying defendant's motion for leave to file a delayed motion for new trial as the defendant's own "affidavit present[ed] no prima facie evidence of unavoidable delay occasioned by a delayed discovery of evidence relied upon as the basis to grant a new trial"); *State v. York*, 2d Dist. No. 99-CA-54 (Feb. 18, 2000) (noting that, as the defendant had filed "his own affidavit" explaining why he was unavoidably prevented from timely discovering the evidence, the trial court erred by failing to "hold a hearing to determine whether there was unavoidable delay").

{¶ 18} Defendant asserts that, although he "first heard of the new evidence some time after the direct appeal concluded on September 27, 2007," he was "not able to present that evidence until the prospective witnesses signed affidavits." (Appellant's brief, 23.) Defendant thus contends that he did file his motion for leave within a reasonable time. We disagree.

{¶ 19} In *Berry,* the defendant filed his motion for leave to file a motion for new trial in 2005, asserting that his co-conspirator, Johnson, "would now testify that appellant was not involved in the [1995] murder of Michael Evans." *Id.* at ¶ 6. In support, Berry presented the October 29, 2005 affidavit of Johnson, averring that defendant did not commit the murder in question. We observed that Berry was "aware of Johnson's willingness to testify on his behalf as early as August 2000, but did not file his motion for leave until November 2005." *Id.* at ¶ 39. We held that this was "an unreasonable

delay for which appellant has provided no explanation." *Id.* Thus, in *Berry*, we looked at when Berry became aware of Johnson's recantation, and not the day Johnson signed his affidavit, to conclude that Berry did not file his motion for leave within a reasonable time after discovering the new evidence. *See also Stansberry* (noting that "[w]ithout some standard of reasonableness in filing a motion for leave to file a motion for new trial, a defendant could wait before filing his motion in the hope that witnesses would be unavailable or no longer remember the events clearly, if at all, or that evidence might disappear").

{¶ 20} Similarly, in *State v. Woodward*, 10th Dist. No. 08AP-1015, 2009-Ohio-4213, the defendant filed his motion for new trial several years after his jury trial concluded, premised on a trial witness's recanted testimony. The witness, Stewart, testified at trial that both he and the defendant had shot and killed the victim. In his affidavit, which was attached to the motion for leave, Stewart recanted his trial testimony identifying defendant as his co-consipirator. We observed that the defendant had "learned sometime in 2005 that Stewart would recant his trial testimony," but then waited until February 2008 to file the motion for leave. *Id.* at ¶ 16. We found this delay unreasonable. The defendant asserted that the two-year delay was justified because "it took some time to contact his attorney and that it took time for his attorney to investigate the new testimony." *Id.* While we were considerate of "the logistical difficulties an inmate faces in trying to communicate with a lawyer," we held that "the trial court did not abuse its discretion in concluding this explanation does not justify appellant's delay of more than two years before filing his motions." *Id. See also Woodward* at ¶ 21 (noting that a recanting witness's credibility is highly questionable because the "witness, by making contradictory statements, either lied at trial, in the current testimony, or both times").

{¶ 21} The record demonstrates that defendant was aware of the recantations at least by 2009, when he retained Cline to file a motion for new trial based on the recantations. However, defendant failed to file his motion for leave to file a delayed motion for new trial until December 2014, a five-year delay. Pursuant to *Berry* and *Woodward*, the five-year delay in filing the motion for leave was unreasonable. As noted above, defendant did not provide the court with an affidavit or any other evidence to justify this lengthy delay. Although Cline stated in his 2009 letter that he thought the

boys' recantations unaccompanied by an explanation would be insufficient to support a motion for a new trial, in *Berry,* we observed that a defendant's desire to "build a stronger case" was not a reasonable basis for a delayed filing. *Berry* at ¶ 39. Indeed, "Crim.R. 33(B) does not allow a defendant to wait for further evidence to arise that will bolster his case." *Id.*

{¶ 22} Based on the record before this court, we find that defendant did not file his motion for leave within a reasonable time after discovering the evidence. As such, the trial court did not abuse its discretion in denying defendant's motion for leave to file a delayed motion for new trial. *See Schiebel* at 74 (noting that "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge").

{¶ 23} Based on the foregoing, defendant's sole assignment of error is overruled. Having overruled defendant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN, P.J. and KLATT, J., concur.
_____