[Cite as *State v. Murphy*, 2019-Ohio-4347.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107836 |
| v. | : | |
| ALLEN D. MURPHY, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 24, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-625470-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ronnie Ducoff, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Paul A. Kuzmins, Assistant Public Defender, *for appellant.*

ANITA LASTER MAYS, J.:

## I.  Background and Facts

{¶ 1}   Defendant-appellant Allen D. Murphy ("Murphy") appeals his jury convictions for Counts 1 and 2, rape, R.C. 2907.02(A)(1)(b), a first-degree felony; Count 3, rape, R.C. 2907.02(A)(1)(b), a first-degree felony; Count 4, kidnapping,

R.C. 2905.01(A)(4), a first-degree felony, with a sexual motivation specification, R.C. 2941.147; and Count 5, disseminating matter harmful to juveniles, R.C. 2907.31(A)(1), a fourth-degree felony.

{¶ 2} The victim of the offenses, Murphy's stepdaughter Jane Doe ("Doe"), was nine years old at the time of the October 2016 incident and 11 years old at the time of the August 27, 2018 trial. Doe did not tell anyone about the interaction until visiting family in April 2017.

{¶ 3} The trial court denied Murphy's motion for judgment of acquittal under Crim.R. 29 proffered at the close of the evidence, and a guilty verdict was rendered on September 5, 2018. On September 27, 2018, Murphy was sentenced to a 25-year-to-life term of imprisonment with up to three years of discretionary postrelease control and was designated a Tier III child victim sex offender. Murphy also received jail-time credit for 23 days.

## II. Assignments of Error

{¶ 4} Appellant presents nine assigned errors:

I. Murphy's convictions are based on insufficient evidence where the government's primary witness "really does not know" whether the incident charged actually occurred.

II. Whether Murphy's convictions are against the manifest weight of the evidence.

III. Whether Murphy was denied a fair trial where the doctor was permitted to testify that he diagnosed the alleged victim as a victim of sexual abuse.

IV. Whether Murphy was denied a fair trial where the government solicited testimony that its social worker found the underlying allegations to be "substantiated."

V. Whether the trial court erred by not allowing Murphy to develop the fact that the girlfriend of Doe's father had a history of speaking with young children about sexual matters.

VI. Whether the trial court erred in allowing the government to introduce evidence of Murphy's willingness to take a polygraph test and then impeach that same statement.

VII. Whether the trial court erred in allowing the government to introduce statements on whether Murphy viewed pornography on his cellular phone and then impeach that same statement.

VIII. Whether Murphy was denied the effective assistance of counsel at trial.

IX. Whether Murphy was denied a fair trial when he was precluded from cross-examination of the government's expert about prior sexual abuse of the alleged victim.

## III. Discussion

{¶ 5} The indictment filed on February 1, 2018, charged Murphy with performing cunnilingus, anal penetration, and vaginal penetration of Doe at the time of the incident which the indictment listed as occurring between October 1, 2016, and December 1, 2016. The sexual activity was accompanied by a kidnapping charge due to the restraint of liberty and a charge for exhibiting obscene material to Doe.

### A. Sufficiency of the Evidence

{¶ 6} The question of whether the evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). An appellate court does not weigh the evidence but determines "'whether,

after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 7}    Murphy was convicted of rape under R.C. 2907.02(A)(1)(b), kidnapping pursuant to R.C. 2905.01(A)(4) with a sexual motivation specification (R.C. 2941.147), and disseminating matter harmful to juveniles under R.C. 2907.31(A)(1).  R.C. 2907.02(A)(1)(b) provides:

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 8}    R.C. 2907.01(A) defines sexual conduct to include:

> the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 9}    Kidnapping under R.C. 2905.01(A)(4) states that:

> (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:  * * * (4) [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

{¶ 10} R.C. 2907.31(A)(1) prohibits disseminating matter harmful to juveniles:

(A) No person, with knowledge of its character or content, shall recklessly do any of the following:

(1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles.

{¶ 11} Murphy claims that the evidence is insufficient to support the convictions as a matter of law because Doe does not really know whether the incident really occurred and that there is little to no evidence that corroborates Doe's memory. Murphy offers that the conviction is insufficient as a matter of law. We disagree with Murphy's conclusion.

{¶ 12} The testimony reflects that Doe lived with her mother, sisters, and "Daddy Murph," as she referred to Murphy. (Tr. 401.) In April 2017, Doe was visiting the home of her paternal grandmother where her natural father resided with his girlfriend and several of Doe's half-siblings. It was at that time that Doe stated that she had been molested by Murphy in October 2016, about the time of her sister's birthday.

{¶ 13} The paternal grandmother reported the incident to 696-KIDS. Doe said that she was afraid to tell anyone because her mother would be upset and Murphy would take her cell phone away. At that time, Doe had moved from Cleveland to Portage County where her mother was caring for the maternal grandfather. Social workers and police in Portage County and in Cleveland became involved and Murphy was instructed to leave the home.

{¶ 14} Murphy cites Doe's August 2017 statement to her mother that the incident seemed like a dream broached during cross-examination:

Counsel:     And what made you question whether or not what you thought had occurred?  What made you question that?

Witness:     Because finally like my heart and my instincts were telling me like it didn't happen.  And then like my head was telling me it did happen.

Counsel:     Did you say something about a dream?

Witness:     Yeah.  Like it could have been a dream. Because like if I — like — well, this happened a couple years ago when my mom and my dad were together.  Like they would like say that we went to — like we would go to boot camp, but we really didn't.  Then I like had a like dream and then I found out like a couple months later once I told my mom I thought it happened, and she finally told me that it didn't happen.

Counsel:     Is that something that's happened to you on more than one occasion? Has that happened with other things?

Witness:     It was just that thing.

Counsel:     Sometimes you have a dream or sometimes you think something happened and it really didn't?

Witness:     Yes.

Counsel:     What do you think with respect to what you said your stepdad did to you? What do you think, did happen or did it not happen?

Witness:     Um, I really don't know.

Counsel:     Okay. And you went to the doctor's, right?

Witness:     Yes.

Counsel:     And did they tell you that were okay?

Witness:     Yes.

Counsel:     Do you miss your stepdad?

Witness:     Um, yeah.

Counsel:    Has anybody made you say what you just told me?

Witness:    No.

(Tr. 417-419.)

{¶ 15}  During redirect examination, Doe recounted a situation that occurred when she was much younger where she thought that she recalled going to boot camp with her biological parents but she later learned that it did not happen.  Doe said the situation was "I like had a like dream."  (Tr. 418.)

State:    Is that something that's happened to you on more than
          one occasion?  Has that happened with other things?

Witness:    It was just that thing.

(Tr. 418.)

{¶ 16}  Doe then explained:

State:    You said your heart told you that it didn't happen but your
          mind told you it did?

Witness:    Yes.

State:    Is it hard for you to accept that all those things happened?

Witness:    Um, kind of?

State:    Are they bad memories?

          Counsel:    Objection, Your Honor.

          Court:    Overruled.

State:    Did you understand the question?

Witness:    No.

State:    Stuff you — when you described his private in your front
          private, is that one of your happy memories or bad
          memories?

Witness:    Like a bad memory.

State:    What about when his private is going into your back private and his hands are pulling apart your butt cheeks? Is that a good memory or a bad memory?

Witness:    A bad memory.

* * *

State:    When you said his tongue was on your vagina — on your private part, is that a good memory or a bad memory?

Witness:    A bad memory.

State:    When you said that white stuff came out of his private and it was on your face and partly in your mouth, is that a good memory or a bad memory?

Witness:    A bad memory.

State:    And when you had to look at the images on his phone where you saw grown-up people doing the stuff you described, was that a good memory or a bad memory?

Counsel:    Objection, Your Honor.

Court:    Overruled.

Witness:    A bad memory.

(Tr. 419-421.)

{¶ 17}    The defense questioned Doe about her out-of-court statement to her mother.  "Evid.R. 801(D) permits rehabilitation of a witness whose credibility has been attacked and the trial court properly permitted the state to rehabilitate [Doe's] credibility."  *State v. Freeman*, 8th Dist. Cuyahoga No. 67383, 1995 Ohio App. LEXIS 2630, *12 (June 22, 1995), citing *Holtz v. Dick*, 42 Ohio St. 23, 1884 Ohio

LEXIS 218 (1884); *State v. Smith,* 34 Ohio App.3d 180, 191, 517 N.E.2d 933 (5th Dist.1986); *State v. Bock,* 16 Ohio App.3d 146, 474 N.E.2d 1228 (12th Dist.1984).

{¶ 18} Doe testified that in October 2016, her mother was not at home when Murphy told Doe to enter the bedroom. Doe's siblings were in the other room.[1] Murphy closed and locked the door, removed Doe's clothing and then removed his own. Doe next stated that Murphy's "front area" "private part" that is used to "pee" "went into" "her front area" that is "used to pee." (Tr. 393-394.) Next, Murphy's "private part" went into "my back private part" and Doe could feel Murphy's hands on her "butt cheeks" "spreading them apart." (Tr. 394.) Doe stated that she was standing during the first two acts but that she was laying on the bed when Murphy began "licking my front part." (Tr. 395.)

{¶ 19} Doe testified that "white stuff * * * was like all over my face and kind of in my mouth a little" that came from Murphy's "private part." (Tr. 405.) Murphy "wiped it off" with a wipe. (Tr. 405.) Doe also testified that, in October 2016 and "on different days," Murphy showed pornographic videos to Doe while in the bedroom. The videos were viewed on Murphy's cell phone and showed nude men and women "being on each other" and "licking each other and kissing each other and stuff." (Tr. 397-398.)

{¶ 20} Doe also testified that she did not tell the social workers or anyone else that the events were like a dream. Doe's statements to Portage County Social

---

[1] Work records for Doe's mother reflected that she was away from the home during the time frame referenced.

Worker Alexandra Toth ("Toth"), Cleveland sex crimes unit Detective Cynthia Adkins ("Det. Adkins") and Dr. Phil McPherson ("Dr. McPherson") of Akron Children's Hospital were consistent with Doe's testimony.

{¶ 21} A week after Doe revealed the incident to her father's girlfriend and paternal grandmother, Doe was interviewed by social worker Toth with Portage County Children's Services. Toth testified that Doe told Toth that Murphy "touched her privates" and showed "her [adult] videos on his phone" depicting "naked * * * girls licking girls' privates and girls sucking boy's privates." (Tr. 260.) Doe also told Toth about the cunnilingus, anal and vaginal penetration, and that Murphy wiped off the "white stuff" off of her face that was emitted by Murphy's "private." (Tr. 262.)

{¶ 22} Toth and a detective went to Doe's house and informed Doe's mother of the allegations. The mother and Murphy were instructed that he could not reside in the home during the investigation. The social services agency subsequently discovered that the mother allowed Murphy to return to the home without agency or police permission.

{¶ 23} Toth took Doe to Akron Children's Hospital where she was examined by Dr. McPherson who was specially trained in child sexual abuse cases. The examination took place in April 2017, approximately sixth months after the incident. No genital abnormalities were found. Dr. McPherson opined that "[i]n my years of doing this as well as in the medical literature, and it sounds surprising, but in most cases of child sexual abuse, physical exam findings of the genital area and the anal area are normal." (Tr. 318.) Toth observed the interview through a one-way mirror

and testified that Doe's statement to Dr. McPherson was consistent, though more detailed, than her interview with Toth.

{¶ 24} Dr. McPherson also said that it is common for "children who have experienced sexual abuse" to report "sensory-motor details, contextual details." (Tr. 311.)

> So, for example, in sensory-motor details, if a child is stating that, well, for example, he took off my clothes, he laid me down on the bed and he put his mouth or his tongue on my private part, those are sensory-motor details that a child who hasn't experienced child sexual abuse, especially the younger ones, may not be able to describe in the manner that they did.
>
> If a child says that white stuff or milk or something came out of the person's penis and landed on them, again, that's a detail that typically children will not be able to communicate unless it's happened to them. Many times children have been exposed to pornographic images. If they provide details about those pornographic images, who was there, what kind of device was used, *et cetera*, those are details that a child typically cannot make up. And so these contextual sensory-motor details are just as important for us as the type of contact abuse that the child experienced.

(Tr. 311-312.)

{¶ 25} A victim's testimony alone is sufficient to support a conviction for sexual conduct. *State v. Bacho*, 8th Dist. Cuyahoga No. 93828, 2010-Ohio-4885. *See also State v. Timmons*, 10th Dist. Franklin Nos. 13AP-1038 and 13AP-1039, 2014-Ohio- 3520, ¶ 23, citing *State v. Henderson*, 10th Dist. Franklin No. 10AP-1029, 2011-Ohio-4761, ¶ 17. Further, to Dr. McPherson's observation regarding the lack of genital abnormalities, "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse" for purposes of rape. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134, ¶ 23, citing R.C. 2907.01(A). Also, "'a

physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury.'" *State v. Parks*, 8th Dist. Cuyahoga No. 106977, 2019-Ohio-867, ¶ 11, quoting *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46.

{¶ 26} Doe testified that Murphy closed and locked the bedroom door, removed her clothing and proceeded to engage in the sexual activity. Kidnapping under R.C. 2905.01(A)(4) "requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 196; *State v. Dove*, 8th Dist. Cuyahoga No. 101809, 2015-Ohio-2761, ¶ 37. "[T]he kidnapping statute punishes certain removal or restraint done with a certain purpose." *State v. Cope*, 12th Dist. Butler No. CA2009-11-285, 2010-Ohio-6430, ¶ 68. R.C. 2941.147, the sexual motivation specification statute, requires that the state show that the underlying offense was committed with "a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J). *State v. Price*, 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912, ¶ 43.

{¶ 27} As to the length and manner of the restraint for a kidnapping conviction, this court has held:

> Ohio law is clear that "[a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint 'is such as to place the victim in the offender's power and beyond immediate help, even though temporarily.' * * * The restraint 'need not be actual confinement, but may be merely compelling the victim to stay where he is.'" *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-5483, 899 N.E.2d 1021, citing *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, 2000 Ohio App. LEXIS 5057 (Nov. 2, 2000).

*State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 24.

{¶ 28} A minor may be restrained where there is "'evidence of subtle and/or psychological force'" by an individual "'who is an authority figure'" "'even in the absence of any express threat of harm of significant physical restraint.'" *State v. Clark*, 8th Dist. Cuyahoga No. 101863, 2015-Ohio-3027, ¶ 30, quoting *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 12 (involving a 13-year-old), and *State v. Szorady*, 8th Dist. Cuyahoga No. 95045, 2011-Ohio-1800, ¶ 34 (also involving 13-year-old victims). *See also State v. Garner*, 8th Dist. Cuyahoga No. 89840, 2008-Ohio-1949, ¶ 18, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988) ("'in cases involving the 'filial obligation of obedience to a parent,' a lesser showing of force may be sufficient.'")

{¶ 29} We have also established that R.C. 2907.31(A) governing the dissemination of harmful materials to minors

> does not require knowing dissemination; rather, it requires knowledge of the character or content of the matter. Knowledge of the character or content of the matter is shown when a person is aware that the matter probably contains material that is obscene or harmful to juveniles. See R.C. 2901.22(B). Further, because the factfinder cannot look into the mind of a defendant, a defendant's knowledge must be inferred from all the facts and circumstances of the case. *State v. Tolliver,* 49 Ohio App.2d 258, 262, 360 N.E.2d 750 (1976).

*State v. Dissell*, 8th Dist. Cuyahoga No. 85072, 2005-Ohio-4395, ¶ 26.

{¶ 30} In *Dissell,* the ten-year-old victim testified that the defendant sent her into a room where an obscene video was playing:

> the couple on the video were naked, described what they looked like, and described what they were doing. R.C. 2907.01(F) defines

something as obscene when "(2) Its dominant tendency is to arouse lust by displaying or depicting sexual activity, masturbation, sexual excitement, or nudity in a way that tends to represent human beings as mere objects of sexual appetite."

*Id.* at ¶ 29. The defendant argued that the evidence did not support the mens rea of reckless under R.C. 2901.22(C). The trial court determined that a rational trier of fact could have concluded that "because the video was playing, Dissell had left it on with heedless indifference to the consequences and had perversely disregarded a known risk by sending a juvenile to the room." *Id.* at ¶ 28.

{¶ 31} Doe testified that Murphy showed her obscene videos on his cell phone several times and she described the nudity and sexual activities depicted. The testimony supports the conclusion that the material was obscene under R.C. 2907.01(F), and that Murphy acted, at a minimum, with a reckless mens rea "with heedless indifference to the consequences * * * that a person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C); *Dissell* at ¶ 28.

{¶ 32} Murphy secured a new cell phone in January 2018, and the results of the forensic review of Murphy's current cell phone only revealed activities since that time. In spite of Murphy's statement that he has not watched pornography for a number of years because Doe's mother did not like it, the cell phone extraction results indicated several pornography websites had been accessed since Murphy acquired ownership of the phone.

{¶ 33} Viewed in a light most favorable to the prosecution, we find that the evidence was sufficient to support the convictions in this case as a matter of law. The first assigned error lacks merit.

### B. Manifest Weight

{¶ 34} Murphy also claims that his conviction is against the manifest weight of the evidence. "A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial." *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

{¶ 35} We sit "as a 'thirteenth juror.'" *Thompkins* at 380, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

> In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

*Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 81.

{¶ 36} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the

proffered testimony.'" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 37} The evidence cited in our analysis of sufficiency also supports a finding that the verdict is not against the manifest weight of the evidence. Though only nine years old at the time of the incident, Doe was able to describe the events that transpired and the order in which they transpired. Doe's description of the events to family, police, social workers, and the examining doctor remained consistent.

{¶ 38} We do not find this to be the "'exceptional case in which the evidence weighs heavily against conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶ 39} The second assignment of error also fails.

## C. Whether Murphy was Denied a Fair Trial where the Doctor was Permitted to Testify that he Diagnosed the Alleged Victim as a Victim of Sexual Abuse

{¶ 40} Here Murphy argues that Dr. McPherson improperly commented on the victim's veracity in a child sexual abuse case in contravention of the holding in *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). Murphy states that Dr. McPherson told the jury that it is improbable that nothing happened at all, and "that he diagnosed [Doe] as sexually abused based on nothing more than her history without any physical corroboration * * * [which] amounted to a comment on [Doe's] veracity." Appellant's brief, p. 14.

{¶ 41} We observe that there were no objections made during the direct examination. Thus, we review for plain error and Murphy must show that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 42} "It is well established that, pursuant to Evid.R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court." *Caruso v. Leneghan*, 8th Dist. Cuyahoga No. 99582, 2014-Ohio-1824, ¶ 32, quoting *State v. Heinish*, 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990).

> Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion. *Id.*, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 23, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

*State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 16.

{¶ 43} In this case, the statement was elicited by Murphy during cross-examination. Thus, to the extent error exists,

> Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss*, 8th Dist. No. 84433, 2005-Ohio-775, ¶ 5, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). The doctrine precludes a defendant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *Doss* at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). The doctrine applies when defense

counsel is "actively responsible" for the trial court's error. *State v. Campbell,* 90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178.

*State v. Benitez,* 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 21.

{¶ 44} Dr. McPherson's statement, placed in context, related to Murphy's challenge to the absence of genital trauma.

> Witness:   So depending on the type of contact, there may or may not be injury, and because there was such a significant amount of time from the type of contact till I examined her, if there was injury, it very well could have healed completely.
>
> Counsel:   Or nothing happened at all?
>
> Witness:   Yes. That's also a possibility. Not probable, but it's possible.

(Tr. 332.)

{¶ 45} Dr. McPherson explained the comprehensive protocol of conducting interviews with the family, child, social service agency, and related information, as well as the physical examination, employed in the diagnosis and management of child sexual abuse victims. As we cited in our sufficiency analysis, Dr. McPherson opined that it is common for "children who have experienced sexual abuse" to report "sensory-motor details, contextual details." (Tr. 311.)

{¶ 46} Thus, Dr. McPherson shared the information underlying his opinion that the sexual abuse occurred.

> The Ohio Supreme Court has held that an expert's opinion testimony on whether a child has been sexually abused is helpful to jurors and is admissible under Evid.R. 702 and 704. *See State v. Gersin,* 76 Ohio St.3d 491, 494, 668 N.E.2d 486 (1996); *State v. Boston,* 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1987); *State v. Wolf,* 11th Dist. Lake No. 93-L-151, 1994 Ohio App. LEXIS 5993 (Dec. 30, 1994).

*State v. Ervin*, 8th Dist. Cuyahoga No. 80473, 2002-Ohio-4093, ¶ 27.

{¶ 47} As to Dr. McPherson's response that it was "[n]ot probable, but possible" that nothing happened at all as the defense suggested (tr. 332):

> An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, an expert may provide testimony that supports "the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." *State v. Stowers*, 81 Ohio St.3d 260, 262-263, 690 N.E.2d 881 (1998).

*Id.* at ¶ 34. We find that Dr. McPherson's testimony was admissible.

{¶ 48} We further reject Murphy's claim that Dr. McPherson's allegedly improper comment was bolstered by the fact that Dr. McPherson had never been asked to testify in a case where he did not diagnose abuse. (Tr. 328.) This statement misconstrues Dr. McPherson's testimony.

{¶ 49} During direct examination, Dr. McPherson described his education, experience, qualifications, and the process employed during his examination of more than 1,700 children during his years of practice for indications of sexual abuse. Dr. McPherson prepared an expert report in the instant case at the request of the defense to "explain why children who have been sexually abused, the vast majority of them have normal exams." (Tr. 326.)

{¶ 50} During cross-examination, the defense attempted to show that, because Dr. McPherson had testified primarily for the prosecution, it followed that his testimony was designed to find that abuse had occurred.

Counsel:    Sir, have you ever testified for a defendant in a case of child sexual abuse?

Witness: I've never been subpoenaed. So the answer would be no. But if I had been subpoenaed, then absolutely I would have.

Counsel: The question is how many times have you testified in court with respect to these types of allegations?

Witness: Since I started doing this work years ago?

Counsel: Yes.

Witness: Over two, three dozen times in various jurisdictions.

Counsel: And all of those times it was for the government?

Witness: No, not all those times.

Counsel: State of Ohio?

Witness: No. I practiced this medicine in Idaho for a number of years as well.

Counsel: Your testimony in Idaho would have been for law enforcement?

Witness: My testimony was based on the subpoena received typically by the prosecution or the state based on evaluating the patients. Now, the patients that I evaluate where I don't diagnose abuse, I never get subpoenaed — because they usually don't go to court. However, if I didn't — if I diagnosed no abuse and I was subpoenaed by the defense, yeah, I would absolutely go testify.

Counsel: The question is this, sir. Your testimony — you've never testified as a defense expert. You've always testified for the government; is that fair to say?

Witness: No. I've been subpoenaed at least one time by a defense counsel. The majority of time I'm subpoenaed by the state or the prosecution.

Counsel: I'm not talking about subpoena. I'm talking about being retained by a defendant, being paid for your services. That's never occurred, correct?

Witness: No. At least one time it has occurred.

Counsel: Where you were a defendant's expert?

Witness: The defense — the attorney for the defendant subpoenaed me, yes.

Counsel: He subpoenaed you to court, correct?

Witness: Correct, yes.

Counsel: When you get subpoenaed, that means you have to come, correct?

Witness: Yes. That's legally binding for anyone, not just a physician.

(Tr. 327- 329.)

{¶ 51} It appears that defense counsel made a strategic decision at trial to pursue a line of questioning designed to cast a shadow of bias on the witness and to focus on the lack of genital trauma evidence. Murphy "cannot now claim that his due process rights were violated by defense counsel's elicited testimony." *Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, at ¶ 22. In addition, Murphy cannot show that his rights were prejudiced and that "but for the error, the outcome of the trial would clearly have been otherwise." *Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

{¶ 52} The third assigned error is overruled.

**D. Whether Murphy was Denied a Fair Trial where the Government Solicited Testimony that its Social Worker Found the Underlying Allegations to be "Substantiated"**

{¶ 53} Murphy claims that Social Worker Toth of the Portage County Children and Family Services "impermissibly testified that she found the allegations

to be substantiated on nothing more than Doe's statements" citing transcript pages 277-278, 296-297.  We review the trial court's admission or exclusion of evidence for an abuse of discretion.  *Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 16.

{¶ 54} Toth explained that social workers are required to assign agency designations to cases based on one of three categories:

> Witness:   Unsubstantiated, meaning it did not happen, the allegations were not true. Indicated [sic] was that there was circumstantial evidence that say it may have happened but it's not yes or no. And then substantiated meaning yes, the incident —
>
> State:   Okay.  I'm sorry.  I didn't mean to cut you off.  Did you give it a disposition?
>
> Witness:   Yes.
>
> Counsel:   Objection, Your Honor.
>
> Court:   Overruled.  Overruled.  You arrived at a decision?
>
> * * *
>
> Witness:   Yes.
>
> Court:   And what was that?
>
> Witness:   Substantiated.

(Tr. 277-278.)

{¶ 55} During cross-examination, Toth explained the basis for designating Doe's case as substantiated:

> Witness:   Doe had talked to family, and she had talked to me.  She had the interview at the hospital, and every single story

| | that she gave was consistent, every — pretty much every detail. |
|---|---|
| Counsel: | You indicated it was consistent.  There's an allegation of one time during the month of October there was touching, correct? |
| Witness: | Yes. |
| Counsel: | Anal, vaginal, and oral, correct? |
| Witness: | Correct. |
| Counsel: | So it's your testimony because that was repeated by one source on various occasions, that that is what your findings then being substantiated [sic]. |
| Witness: | Yes. |
| Counsel: | Okay.  You're aware of a physical exam as well? |
| Witness: | Yes. |
| Counsel: | You were present at the hospital for an interview? |
| Witness: | Yes. |

(Tr. 296-297.)  Toth also testified during redirect examination that, in addition to the consistency of Doe's statements during three different interviews, Doe's graphic descriptions of the events contained details that a nine-year-old would not generally be familiar with.

{¶ 56} We previously considered whether a social worker's testimony that the social service agency had determined that a victim's abuse claim was "substantiated" was admissible in *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2015-Ohio-1446.

This court has repeatedly recognized "that a social worker's interdepartmental determination of an allegation of abuse — such as,

unsubstantiated, substantiated, or indicated — is acceptable, provided the social worker does not testify as to the truthfulness or credibility of the alleged victim." *State v. Jackson, 8th* Dist. Cuyahoga No. 92531, 2010-Ohio-3080, ¶ 17, citing *State v. Smelcer*, 89 Ohio App.3d 115, 623 N.E.2d 1219 (8th Dist.1993). [Citations omitted.]. In *Smelcer*, this court noted that "the [*State v.*] *Boston,* [46 Ohio St.3d 108, 545 N.E.2d 1220 (1989)] decision did not prohibit an expert from giving his or her opinion on whether sexual abuse occurred." *Id.* at 121, citing *State v. Cornell*, 8th Dist. Cuyahoga No. 59365, 1991 Ohio App. LEXIS 5664 (Nov. 27, 1991).

While the social worker's testimony reports the agency's finding that sexual abuse of the victim was indicated, it does not offer any opinions on who committed the abuse. At no point during the social worker's testimony did she testify that she believed Ferrell was the perpetrator or was the person who committed the abuse. The social worker testified repeatedly that her purpose in interviewing the victim was to assess his or her safety. In doing so, the social worker referred to the accused as the "alleged perpetrator."

*Id.* at ¶ 15-16.

{¶ 57} Toth referred to Murphy as the "alleged perpetrator" and stated that her "mission" was to "assess [Doe's] safety, her risk and the need for any kind of services, medical appointments, anything that might contribute or help the situation that she's in." (Tr. 259-260.) Toth "did not testify as to the veracity of the victim's accusations against" Murphy. *Ferrell* at ¶ 17. Toth "testified about the interdepartmental determination regarding the allegation of abuse, which is permissible under the existing law." *Id.*

{¶ 58} The fourth assigned error is overruled.

### E. Whether the Trial Court Erred by not Allowing Murphy to Develop the Fact that the Girlfriend of Doe's Father had a History of Speaking with Young Children about Sexual Matters

**{¶ 59}** We consider whether the trial court abused its discretion by excluding evidence of whether Murphy's natural father's girlfriend had a history of discussing sexual matters with young children. *Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, at ¶ 16. An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.*, citing *Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶ 60}** The trial court did not allow testimony that a no-contact order was issued to stop the father's girlfriend from discussing sexual matters with Doe's younger sister. In April 2018, a second order was issued forbidding the girlfriend from discussing the pending sexual allegations with Doe. Murphy argues that the information was relevant to the jury's consideration of whether Doe may have been influenced by the girlfriend to make the allegations of abuse. The state counters that the evidence is irrelevant and any error is harmless.

**{¶ 61}** This court has observed that:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. Evid.R. 402 provides that evidence that is not relevant is inadmissible. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A).

*State v. Richard*, 8th Dist. Cuyahoga No. 78813, 2002-Ohio-9, ¶ 23.

{¶ 62} A trial court's determination to exclude evidence must affect the substantial rights of the complaining party in order to require reversal. *O'Brien v. Angley*, 63 Ohio St.2d 159, 164, 407 N.E.2d 490 (1980).

> "'Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision.'"

*O'Brien* at 164-165, quoting *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349, 91 N.E.2d 690 (1950), paragraph three of the syllabus. *See also Ryerson v. White*, 8th Dist. Cuyahoga No. 100547, 2014-Ohio-3233, ¶ 46.

{¶ 63} As the state indicates, the jury heard evidence regarding the girlfriend's possible influence when Murphy's video interview was played during the testimony of Det. Adkins. Murphy stated that Doe's father and girlfriend may have been "putting stuff in her head" and the "girlfriend is always taking [Doe] off by herself to have little conversations when no one's around." (Tr. 593.) Murphy added that the motive could have been to have Doe live with the father and girlfriend.

{¶ 64} Our findings on the sufficiency and manifest weight of the evidence herein serve as the foundation for our determination here that any asserted error was harmless. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Middleburg Hts. v. Lasker*, 2016-Ohio-5522, 76 N.E.3d 372, ¶ 16 (8th Dist.). There has been no

showing that Murphy's substantial rights were impeded by the trial court's decision to exclude the evidence.  *O'Brien* at 164-165.

{¶ 65} The fifth assignment of error is overruled.

**F.  Whether the Trial Court Erred in Allowing the Government to Introduce Evidence of Murphy's Willingness to Take a Polygraph Test and then Impeach that Same Statement**

**G.  Whether the Trial Court Erred in Allowing the Government to Introduce Statements on Whether Murphy Viewed Pornography on his Cellular Phone and then Impeach that Same Statement**

{¶ 66} We combine the sixth and seventh assigned errors for ease of analysis. We find that the assigned errors lack merit.

{¶ 67} Forensic Investigator Gregory G. Stein testified regarding the data retrieved from Murphy's phone.  The evidence reflects that Murphy first used the cell phone on January 8, 2018, and the last activity occurred on January 25, 2018, when Murphy voluntarily surrendered his phone to police.  Included in the data report are internet searches for "polygraph expert shows how to beat a lie detector test."  (Tr. 538.)  Also contained in the data results were multiple searches for pornographic videos and access to those videos during January 2018.

{¶ 68} Murphy argues that the state's motive was to elicit testimony regarding the polygraph test and phone pornography and impeach the statements with the cell phone evidence.  Evid.R. 607:

(A) Who May Impeach.  The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.  This

exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803.

(B) Impeachment; reasonable basis.  A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact.

{¶ 69} Murphy's videotaped police interview was introduced during the testimony of the next state's witness, Cleveland Police Sex Crime Det. Adkins.  Doe's case was assigned to Det. Adkins on April 30, 2018.  Det. Adkins reviewed the Portage County social services records, interviewed Portage County Social Worker Shrout, the successor to Toth, and the medical and forensic interview records from Dr. McPherson.  Det. Adkins conducted separate interviews of Doe and her mother on January 24, 2018.

{¶ 70} Det. Adkins interviewed Murphy on January 25, 2018. A transcription of the portion of the video played during Det. Adkins's testimony appears in the trial record.   Det. Adkins testified that she asked Murphy at least three times whether he watched pornography, and Murphy said that he did not currently watch it.

{¶ 71} During the interview, Det. Adkins asked Murphy, "[a]nd you said you're willing to take a polygraph test?"  (Tr. 620.)  Murphy replied "[y]es."  *Id.* Det. Adkins said, "[g]ive me a couple of minutes."  *Id.*  The video was then stopped.

{¶ 72}    The state then inquired:

State:        And at some point you asked him about a lie detector test?

Witness:     Yes.

State:        And what was his response to that?

Witness:     He said that he was willing to take one.

State:       And is there a reason that you asked — is there a reason that you asked him that question?

Witness:     Basically to see what his response would be.

State:       Did you have any reason to believe that that would be his response?

Witness:     Yes.  I believe[d] that he would tell me yes.

(Tr. 622.)

{¶ 73}  During cross-examination, Det. Adkins confirmed the video depiction of Murphy's consent to search his cell phone.  After the redirect inquiry, and after the parties complied with the trial court's request for a sidebar, the trial court asked:

Court:       Detective, could you tell the ladies and gentlemen of the jury why do you believe that Murphy would say yes to taking a polygraph?

Witness:     I mean, my opinion?

Court:       Well, I think you expressed an opinion in that response to that question.  You thought he would say yes.  So you want to —

Witness:     I thought he would say yes just because he's being defiant about things.

(Tr. 642-643.)

{¶ 74}  The trial court then allowed the state to make additional inquiry limited to "[j]ust within the scope of" the trial court's question.  (Tr. 643.)

State:       When you interviewed [Doe's mother], did she mention anyone being willing to take a polygraph test?

Witness:     Yes.

State:     Who

Witness:   [Murphy].

(Tr. 643.)

{¶ 75} No objections were posed during the questioning and the exhibits containing the cell phone data information and the interview video were entered into evidence without objection. Thus, we review for plain error and Murphy must show that "but for the error, the outcome of the trial would clearly have been otherwise." *Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

{¶ 76} As to the polygraph test, it is true that Ohio law,

> "precludes the admission of the willingness or unwillingness of a party to take a polygraph examination." *State v. Graves*, 1st Dist. Hamilton No. C-950022, 1995 Ohio App. LEXIS 3940, *3 (Sept. 13, 1995). "However, the mere mention of the phrase 'polygraph examination' by a witness testifying on behalf of the state does not necessarily result in prejudice to the accused." *Id.*

*State v. Gilliam*, 4th Dist. Pickaway Nos. 15CA19 and 15CA20, 2016-Ohio-2950, ¶ 34.

{¶ 77} There is no evidence that the polygraph test was administered or any indication of test results. After a thorough review of the record, we cannot say that the admission of the polygraph testimony rose to the level of plain error so that the outcome of the case would have been different without it. *Moreland* at 62. We draw the same conclusion regarding the admission of the cell phone evidence revealing access to pornography to contradict Murphy's video statement that he stopped watching pornography when he married Doe's mother in December 2015.

{¶ 78} We find that the admission of the cell phone evidence revealing the searches for instructions on passing a polygraph test and access to pornography did not constitute a violation of Evid.R. 607(A) ("the credibility of a witness may be attacked by the party calling the witness."). As this court recently stated, "[i]t is impossible to impeach an individual who does not testify as a witness." *State v. McGuire*, 8th Dist. Cuyahoga No. 105732, 2018-Ohio-1390, ¶ 25. Further, for purposes of plain error, Murphy cannot show that his rights were prejudiced and that "but for the error, the outcome of the trial would clearly have been otherwise." *Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

{¶ 79} The sixth and seventh assignments of error are overruled.

## H. Whether Murphy was Denied the Effective Assistance of Counsel at Trial

{¶ 80} To substantiate a claim of ineffective assistance of counsel, Murphy must show that counsel's performance was so deficient that he was prejudiced and denied a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Murphy must also show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 57 (8th Dist.), citing *Strickland*.

{¶ 81} Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). The defendant must overcome the presumption that, under the

circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). We consider whether the actions by counsel were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Strickland* at 690.

{¶ 82} Murphy states that counsel was ineffective for failing to object to evidence referenced in Murphy's assignments of error: (1) Dr. McPherson's expert diagnosis that Doe was a victim of sexual abuse; (2) admission of the cell phone evidence of pornographic access; (3) the polygraph references and related cell phone search; (4) improper impeachment of Murphy's videotape statement; (5) admission of the unredacted video interrogation; and (6) a host of other statements by Det. Adkins's testimony.

{¶ 83} Murphy claims that the cumulative effect of counsel's error deprived him of a fair trial.

> The Ohio Supreme Court has recognized the doctrine of cumulative error. *See State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *Id.* at 196-197. *See also State v. Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Moreover, "errors cannot become prejudicial by sheer weight of numbers." *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d 1068.

*State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 64.

{¶ 84} We have already determined herein that Murphy's claims under items one, two, three, and four lack merit and thus do not constitute error. "[W]here it is found that the trial court did not err, cumulative error is simply inapplicable." *Id.* at ¶ 66.

{¶ 85} As far as Murphy's statement to police is concerned,

> A statement made by an accused in the course of a custodial interrogation is admissible at trial only upon proof that the accused was advised of his constitutional rights and that the accused voluntarily, knowingly, and intelligently waived those rights. *State v. Dailey*, 53 Ohio St.3d 88, 91, 559 N.E.2d 459(1990), citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). *See also State v. Hamilton*, Clermont App. No. CA2001-04-044, 2002-Ohio-560.

*State v. Ogletree*, 8th Dist. Cuyahoga No. 84446, 2004-Ohio-6297, ¶ 56.

{¶ 86} According to the videotaped interview, Det. Adkins advised Murphy of his *Miranda* rights:

Det. Adkins: Okay. Since this is a criminal investigation, I do have to advise you of your rights. So you can read these, and I'm going to read them to you as well. You have the right to remain silent. Anything you say can and will be used against you in court.

You have the right to consult with a lawyer before answering any questions and to have a lawyer with you during any questioning. If you cannot afford a lawyer, one will be provided for you free of cost if you want one. On this side it's asking do you understand your rights as I've explained them. So if you could just write yes or no and initial next to it if you understand your rights. Okay. And then on the next line it asks, are you willing to talk with officers without consulting a lawyer or having a lawyer present with you, and you're writing yes?

Murphy: Yes.

Det. Adkins: Okay. Here I'm asking for you to sign this piece of paper. This is just stating that you've received — I'm sorry — you're not going to get a copy of this. That I've read your rights to you, okay, and that you understand them, and at any point during this interview if you choose not to answer any more questions, let me know, and we'll stop talking.

Murphy: Okay.

Det. Adkins: Okay? So just because you're signing it doesn't mean you have to keep talking the whole time. Now, do you understand why you're here?

Murphy: Yeah. I don't know the whole story but —

(Tr. 571-572.)

{¶ 87} As the state emphasizes, defense counsel stated that the parties "discussed the exhibits in chambers, and [counsel has] no objection in the redacted form on the ones that we identified." (Tr. 647.) The video disk, exhibit No. 20, was not one of the exhibits the parties agreed to submit in redacted form.

{¶ 88} The record also reflects that defense counsel attempted to demonstrate bias by eliciting testimony from Det. Adkins that she obtained a warrant for Murphy's arrest after she concluded the interviews with Doe and Doe's mother. Det. Adkins responded that she wanted to ensure the warrant was in place when Murphy arrived for his interview the next day. The detective expressed concern that Murphy might not show up and he was still in contact with the family in spite of the no contact advisement.

{¶ 89} The video also contained, for example, potentially exonerating statements by Murphy explaining possible reasons why Doe was making the

allegations. We do not find that Murphy has overcome the presumption that defense counsel actions "'might be considered sound trial strategy.'" *Strickland,* 466 U.S. 668, at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674, quoting *Michel*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 90} The eighth assignment of error is overruled.

**I.   Whether Murphy was Denied a Fair Trial when he was Precluded from Cross-Examination of the Government's Expert about Prior Sexual Abuse of the Alleged Victim**

{¶ 91}   A defense objection on this issue was not stated for the record during trial. As a result, we review for plain error and Murphy must show that "but for the error, the outcome of the trial would clearly have been otherwise." *Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 92}   During cross-examination, defense counsel inquired: "[t]here's an indication that sexual abuse occurred with the patient in 2013 and [20]14 as part of the history that you gathered?" (Tr. 329.) The state objected. After a sidebar, questioning continued without further reference to prior sexual abuse. No discussion of the grounds for objection or the trial court's ruling are contained in the record.

{¶ 93} Murphy now asserts the evidence was improperly excluded because "it would have explained" Doe's "ability to speak of sexual matters despite her youth." Appellant brief, p. 35. The state counters that exclusion was proper under the Ohio rape shield statute:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the

victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D).

{¶ 94} Ohio law does provide that:

Cross-examination of a rape victim concerning prior false allegations of sexual abuse may be permitted in the discretion of the trial court, if the defendant shows the allegations were clearly false and no sexual activity took place. *State v. Boggs*, 63 Ohio St.3d 418, 588 N.E.2d 813 (1992). If sexual activity, consensual or not, took place, the rape shield law would prohibit cross-examination on that issue. *Id.* * * * The defense is not entitled to question the victim about other sexual allegations unless they are proven untrue. *Id.*

*State v. Walker*, 8th Dist. Cuyahoga Nos. 79586 and 79695, 2002-Ohio-3265, ¶ 66-67.

{¶ 95} Murphy argues that the rape shield statute does not transcend his constitutional rights and his ability to prevent a defense.

{¶ 96} This court previously observed:

Ohio courts recognize that "[t]he rape shield statute is not always applied literally, as in some instances, it might infringe upon a defendant's constitutional right to confront witnesses." *State v. Brisco*, Cuyahoga No. 76125, 2000 Ohio App. LEXIS 3835 (Aug. 24, 2000), citing *[State v.] Gardner*, [59 Ohio St.2d 14,] 16-17, 391 N.E.2d 337 (1979). *See also State v. N.D.C.*, 10th Dist. Franklin No. 06AP-790, 2007-Ohio-5088; *In re Michael,* 119 Ohio App.3d 112, 118, 694 N.E.2d 538 (1997) ("[a]pplication of the rape shield law may not * * * unduly infringe upon a defendant's constitutional rights").

In determining whether R.C. 2907.02(D) is unconstitutional as applied, a balancing test must be employed, whereby a court "must thus balance the state interest which the statute is designed to protect against the probative value of the excluded evidence." *Gardner* at 17.

Importantly, in order to be admissible, such evidence must involve more than a mere attack on the credibility of a witness. *Id.* Further, in order "[t]o assess the probative value of excluded evidence, it is necessary to examine its relevance to the issues which it is offered to prove." *Id.*

*State v. Young*, 8th Dist. Cuyahoga No. 92127, 2009-Ohio-5354, ¶ 23-24.

{¶ 97} Courts have further determined regarding child victims that

evidence of prior sexual abuse to a victim, who is a child of tender years, may be admissible for the defense to show the source for the child's sexual knowledge. [*State v.*] *Kenney*, [10th Dist. Franklin No. 09AP-231, 2010-Ohio-3740,] at ¶ 20. That evidence attempts to "dissuade" a factfinder "from concluding that a defendant must be guilty of sex offenses being prosecuted, given the extraordinary sexual knowledge of a child victim of tender years." *Id.*, citing [*State v.*] *N.D.C.,* [10th Dist. Franklin No. 06AP-790, 2007-Ohio-5088,] at ¶ 35. "Through the evidence of a child's prior sex abuse, the defendant attempts to exonerate himself by showing that the child's sexual knowledge was attributable to another person's misconduct." *Id.*

*In re M.C.*, 10th Dist. Franklin No. 12AP-618, 2013-Ohio-2109, ¶ 61.

{¶ 98} Our analysis, however, stops here. The record reflects that Murphy failed to pursue his statutory remedy under R.C. 2907.02(E) that provides:

Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

R.C. 2907.02(E); *Young* at ¶ 28.

{¶ 99} "[T]he Ohio Supreme Court has found that trial courts do not have a duty to sua sponte hold a R.C. 2907.02(E) hearing." *Id.* at ¶ 30, citing *State v. Acre*, 6 Ohio St.3d 140, 144, 451 N.E.2d 802 (1988), and *State v. Evans*, 8th Dist. Cuyahoga No. 85396, 2005-Ohio-3847. "A defendant may waive his statutorily

granted right to such a hearing by failing to make a timely request for it." *Id.*, citing *Evans* at ¶ 74, citing *Acre* at 144.

{¶ 100} Murphy did not request a hearing before or during the trial though he was aware of the allegation of prior sexual abuse. Therefore, we find that Murphy "has waived his right to challenge the trial court's decision." *Young* at ¶ 31, citing *State v. Bugg*, 8th Dist. Cuyahoga No. 74847, 1999 Ohio App. LEXIS 4664 (Sept. 30, 1999).

{¶ 101} The ninth assigned error is overruled.

## IV. Conclusion.

{¶ 102} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY